CAVICCHI, McDONALD MOTOR CAR COMPANY vs. EDWARD F. GLEASON & others.

Suffolk.    December 1, 1921. — May 19, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction*, Accounting.

In a suit in equity against two defendants, it appeared that the plaintiff was a corporation organized to deal in automobiles, that its capital stock originally was all issued to one of the defendants to be held by him for the benefit of the other defendant, quarters of it to be transferred to certain parties when they "paid their amounts in full" and the amounts so received to be used by the second defendant for the purchase of automobiles "to be sold by the plaintiff company and the profits made on these sales . . . to belong to the" plaintiff. The amounts were paid in and went into the hands of the second defendant and the stock was delivered accordingly. The second defendant did not become a stockholder. An automobile was sold, the plaintiff receiving as part consideration another automobile, which was transferred to a creditor of the second defendant to pay a personal debt of his. It did not appear that the customer was procured or the sale negotiated by the second defendant. The value of the automobile so transferred was $800. The first defendant was not shown to have taken any part in the sale. A final decree was entered directing both defendants to pay the plaintiff $800. They appealed. *Held*, that

(1) The value of the car received as part of the purchase price of the car sold under the agreement between the plaintiff and the second defendant was a profit on the sale to which the plaintiff was entitled;

(2) A decree requiring the second defendant to pay the plaintiff $800 was affirmed;

(3) The bill should be dismissed as to the first defendant.

BILL IN EQUITY, filed in the Superior Court on January 5, 1909, for an accounting, for the payment and delivery of money and property found due upon an accounting, for a decree ordering the defendants "to produce and turn over and deliver to the plaintiff any and all papers which they may have in their possession or under their control relating to any of the property or automobiles belonging to the plaintiff," and for protective injunctions.

Among "other fraudulent transactions by which," the plaintiff alleged, "the defendants have succeeded in divesting the plaintiff of its property," the plaintiff alleged the following: "That the plaintiff sold an automobile to one Geiger who paid the plaintiff therefor $1,900 in cash and gave in exchange in

addition an 'Apperson' automobile. That said $1,900 is the only money which has ever been deposited in the plaintiff's bank account and that as soon as that was deposited the defendants Gleason and Mahar by false and fraudulent statements induced the treasurer of the plaintiff to pay out $1,500 thereof immediately to the defendant Holcombe on one of his said-purported mortgages; and that the defendant Gleason in some way unknown to the plaintiff obtained possession of said Apperson automobile, a bill of sale of which was given by Geiger to the plaintiff, and that said automobile has been transferred to one Edward LeFevre of Hanson, Massachusetts, a judgment creditor of the defendant Gleason who proved his claim in bankruptcy against the defendant Gleason; and the plaintiff is informed and believes and therefore avers that said automobile was turned over to said LeFevre contrary to the laws of the United States of America to settle the claim which said LeFevre had against said defendant Gleason in said bankruptcy proceedings and that the plaintiff has received nothing of value for said Apperson automobile, that the transaction was done without its consent, but with the full knowledge of the defendants Mahar, Gleason, Prest and Holcombe. That after said transaction had been consummated the defendant Gleason obtained some paper from the treasurer of the plaintiff relating thereto the exact purport of which the plaintiff is ignorant."

The suit was referred to a master. Material findings by the master are described in the opinion. The defendants Gleason and Mahar severally filed exceptions to the report which were as follows:

"1. Because the master erred in finding that the defendants Mahar and Gleason should account to the plaintiff upon the basis of $800 the value of the Apperson car, there being no finding in said report as to the amount of profits which accrued from the transaction in which said car was received;

"2. Because the master erred in finding that this defendant should account to the plaintiff upon the basis of $800, the value of the Apperson car, it not appearing from said report that this defendant had ever exercised any such dominion or control or done any such acts with respect to said car as imposed a liability on him to account to the plaintiff for the value of said car;

"3. Because the master has in said report made no findings

of fact from which it appears that said defendant should account to the plaintiff for the value of said Apperson car;

"4. Because the theory upon which the plaintiff's bill of complaint is drawn with regard to the alleged liability of the defendants by reason of said Apperson car transaction, to wit, that the defendant Gleason in some way unknown to the plaintiff obtained possession of said automobile, and that said automobile was turned over to said LeFevre in settlement of the said LeFevre's claim against Gleason, the said transaction being done without the consent of the plaintiff, but with the full knowledge of all the defendants is not supported by the master's findings with respect to said transaction, and the facts found by the master with respect thereto are not within the scope of the ground of liability alleged in said bill."

The suit was heard upon the master's report and exceptions thereto by *Hammond*, J., by whose order there was entered an interlocutory decree overruling the exceptions to the master's report and confirming the report. By order of *Sanderson*, J., there was entered a final decree directing the defendants Gleason and Mahar to pay to the plaintiff $800 with interest from December 17, 1918, in the amount of $121.96, and costs amounting to $57.79. The defendants Gleason and Mahar appealed.

*P. N. Jones*, for the defendants Gleason and Mahar.

*H. Williams, Jr.*, (*C. E. Fay* with him,) for the plaintiff.

BRALEY, J. The evidence not having been reported, and the pleadings being of doubtful aid, the case as finally presented to the trial court must be ascertained from the master's report. The defendant Gleason had a contract dated February 11, 1908, with the "Palmer & Singer Mfg. Company" of New York which controlled the output of the "Simplex Automobile Company." By its terms he was given the exclusive right "for the sale of automobiles" in "the City of Boston . . . and the territory within a radius of fifty . . . miles from the center of said City," with subagencies to be established by him within three months from the date of the contract in all cities in the territory "having a population of over 25,000." The contract expired by limitation on January 1, 1910; an option however of renewal was given if prior to that time Gleason had purchased and accepted delivery of a certain number of "Simplex automobiles," and "in

all respects" had complied with the agreement. The contract appears to have been in force on July 21, 1908, when Gleason "was petitioned into involuntary bankruptcy." But the master states that "while he enumerated it in his bankruptcy schedules, he claimed it did not pass to his trustee because of its personal nature and because it did not in its terms include his assigns." It was after his bankruptcy that he "formed a plan to capitalize his contract . . . by assigning it to a corporation and issuing stock against it." A corporation accordingly was organized under the laws of the State of Maine on August 28, 1908, with a capital of $25,000, "to manufacture, purchase, repair, or in any way to deal in automobiles and motors of all kinds," and "three shares of stock only were issued when its charter was granted." The efforts to interest various parties in the enterprise, and induce them to purchase stock, although detailed in the report, need not be repeated. The corporation "voted to issue its full capital stock" to the defendant Mahar "for the contract of Gleason . . . or a similar one to be given by the Palmer, Singer Company with the new corporation, to be obtained by Gleason in exchange for the one then held by him." The master finds, that the full capital stock was issued originally to Mahar for Gleason and that the subsequent transfers were in accordance with the arrangement stated by counsel for Gleason at a meeting of all parties in interest on September 12, 1908. We now revert to the terms of this agreement participated in by all parties in interest whereby " . . . the stock was all to be issued . . . to Mahar to be held for Gleason's benefit and that the respective quarters were to be transferred by Mahar to the various parties . . . named when they should pay their amounts in full. The amounts so paid were to be used for the purchase of cars by Gleason to be sold by the plaintiff company and the profits made on these sales were to belong to the company." The stock having been transferred by Mahar to the purchasers, who paid cash, he apparently had received the entire proceeds of the company's capital, but whether the price was less than its par value does not specifically appear. The report is silent, but this defendant admits in his answer that the money "was turned over to him . . . by Mahar." It was under these circumstances that on September 17, 1908, five days after the agreement of promotion

had been entered into and the transfers of stock had been effected, that "Mahar and Gleason went to New York to interview the Palmer and Singer Manufacturing Company relative to a new contract and to order automobiles to be sold by the plaintiff company under the new contract," which is referred to in the report. This contract which was to expire by limitation September 1, 1911, is dated September 17, 1908, and purports to be executed in behalf of the plaintiff by its treasurer. It grants to the plaintiff the exclusive right for the sale of automobiles handled by the Palmer and Singer Manufacturing Company within the territory of "Boston, Mass., and fifty . . . miles surrounding." The contract with Gleason covering the same areas is not shown to have been cancelled, or assigned to the plaintiff. But this is of no consequence. It is plain from the report that the order for the "two cars" in question to be shipped "to the . . . company" was given under the contract with the plaintiff or "the new contract" as the master finds. A deposit of $3,400 was made upon the order, but by whom the money was advanced is not stated. It became necessary when the automobiles arrived to pay for them in full before the bill of lading could be obtained and delivery made to the plaintiff. The necessary amount having been furnished by one Holcombe, the plaintiff secured possession. The title to the automobiles was in the plaintiff, and the sale of one of them to Geiger as alleged in the bill and admitted in the answers was as found by the master a sale by the plaintiff under its contract with the Palmer and Singer Manufacturing Company. But the report does not show that either the customer was procured, or the sale was negotiated by Gleason. The decree for the plaintiff rests upon the following conclusions by the master. "In the sale to . . . Geiger . . . an automobile called an Apperson car was received in exchange as part of the purchase consideration. The Apperson car was delivered to one LeFevre in settlement of a claim against Gleason. The only interest the plaintiff company has in that transaction is the determination of how far the Apperson car figured as a profit in the sale to Mr. Geiger. To that extent it did. I find that the value of the Apperson car at that time was $800 and upon that basis the defendants, Mahar and Gleason, should account to the plaintiff."

If on the record Gleason is not shown to have been a stockholder or to have been entitled to any share in the sales of automobiles, yet by his contract with the company the cars were "to be sold by the . . . company and the profits made on these sales were to belong to the company." While the transaction described was under the company's contract with the Palmer and Singer Manufacturing Company, it resulted in the payment of his debt to LeFevre and decreased accordingly the amount which otherwise would have been received by the plaintiff. The value of the Apperson car which Gleason had thus received was a direct benefit, or a profit on the sale which he could not retain under his agreement with the plaintiff.

The defendant Mahar however is not shown to have taken any part in the sale, or to have had at the time of the transaction any title to or control over the Apperson car, or to have been connected in any way with LeFevre. The stock of the corporation was to be held by him solely for Gleason's benefit, who was to use the money received from its distribution "for the purchase of cars" to be sold by the plaintiff. We are of opinion that after the entire agreement had been consummated and put in operation Mahar sustained no contractual or fiduciary relation to the plaintiff.

It follows that the interlocutory and final decree as to the defendant Gleason are affirmed with costs, but as to the defendant Mahar the interlocutory decree overruling his second, third and fourth exceptions, and the final decree, charging him jointly with Gleason for the value of the Apperson car, must be reversed, and a decree entered dismissing the bill as to him with costs.

*Ordered accordingly.*